UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GEORGIA-PACIFIC GYPSUM, LLC, a Delaware limited liability company,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 117, an unincorporated association, and JEANA HANSEN,<br><br>　　　　　　　Defendants. | CASE NO. C16-5255BHS<br><br>ORDER AFFIRMING ARBITRATION DECISION |

This matter comes before the Court on Defendants International Brotherhood of

Teamsters, Local 117 ("Local 117"), and Jeana Hansen's ("Hansen") (collectively

"Defendants") motion for summary judgment (Dkt. 11) and motion for leave to file

surreply (Dkt. 20); and Plaintiff Georgia-Pacific Gypsum, LLC's ("GP") cross-motion for

summary judgment (Dkt. 13). The Court has considered the pleadings filed in support of

and in opposition to the motions and the remainder of the file and hereby affirms the

arbitrator's decision for the reasons stated herein.

# I. PROCEDURAL HISTORY

On April 4, 2016, GP filed a complaint against Defendants seeking to vacate an arbitration decision and award.  Dkt. 1.

On May 16, 2016, Defendants filed a motion for summary judgment.  Dkt. 11.  On June 7, 2016, GP responded and included a cross-motion for summary judgment.  Dkt. 13.  On June 21, 2016, Defendants replied to its motion, responded to GP's motion, and submitted additional evidence.  Dkts. 16, 17.  On July 5, 2016, GP replied to its motion and submitted additional evidence.  Dkts. 18, 19.  On July 14, 2016, GP filed a motion for leave to file a surreply.  Dkt. 20.  On July 25, 2016, Defendants responded.  Dkt. 21. On July 29, 2016, GP replied.  Dkt. 22.

# II. FACTUAL BACKGROUND

**A.    Collective Bargaining Agreement**

On August 1, 2012, Local 117 and GP entered into a Collective Bargaining Agreement ("CBA").  Dkt. 14, Declaration of Scott G. Seidman ("Seidman Dec."), Exh. 1.  Article 20 of the agreement, entitled Corporate Non-DOT Drug Testing Policy, provides that "[i]t is in the interest of the employees, [GP], [Local 117] and the community that the Tacoma, WA facility remains free from employees reporting for work or working under the influence of illegal drugs, controlled substances and/or alcohol."  *Id*. at 25.  Further, "[e]lements of the Drug Testing plan include . . . post accident testing [and] all positive test results will result in termination."  *Id.*

GP has an independent drug and alcohol testing policy.  *Id*., Exh. 2.  Drug tests under the policy test for the presence of five drugs, including marijuana.  *Id*. at 4.  "All

1  employees who test positive for drugs should be immediately terminated, unless

2  otherwise prohibited by a collective bargaining agreement or applicable law." *Id*. at 7.

3  For marijuana metabolites, the positive test limit is 15 ng/ml. *Id*. at 11. If an employee

4  chooses to challenge a positive test, the employee may have the original specimen

5  retested at a different lab. *Id*. at 15.

6  **B.   Incident**

7      The relevant facts are not disputed. GP hired Hansen, a member of Local 117, in

8  June 2014. On December 26, 2014, Hansen was driving a forklift loaded with wallboard

9  when she accidently hit an obstacle damaging the wallboard. Seidman Dec., Exh. 4. GP

10  took corrective action, which included a drug test. *Id*.

11      On January 8, 2015, Hansen tested positive for marijuana. *Id*., Exh. 6. Hansen

12  met with Mollie Gosselin, the Human Resource manager, regarding the positive test.

13  Hansen also exercised her right to challenge the positive test. On January 19, 2015, the

14  retest confirmed a positive test for marijuana. *Id*., Exh. 8. In accordance with the CBA

15  and GP's drug policy, GP terminated Hansen.

16  **C.   Arbitration**

17      After Hansen was terminated, the Union grieved the termination pursuant to the

18  CBA and elected to arbitrate the dispute. On November 13, 2015, Arbitrator Donald

19  Olson conducted a hearing. *Id*., Exh. 3 ("Decision"). On March 2, 2016, Arbitrator

20  Olson issued a decision in favor of Hansen. *Id*. First, the arbitrator concluded that the

21  relevant contracts prohibit use of marijuana (THC), but the tests determined the presence

22  of an entirely different substance, which was marijuana metabolites (THC-COOH). *Id*. at

7–8. Evidently, in order to detect marijuana, a blood draw must be performed, and Hansen did not provide a blood sample. *Id*.

Second, the arbitrator concluded that GP failed to prove its case by clear and convincing evidence. *Id*. at 8–9. The arbitrator concluded that GP's evidence was unauthenticated hearsay because GP failed to present any witness to authenticate the test results. *Id*. Thus, GP's only evidence was inadmissible. *Id*.

Arbitrator Olson sustained the grievance in its entirety and awarded Hansen a full reinstatement with seniority, back pay with interest, and the same work schedule she had before her termination. *Id*. at 9–10.

## III. DISCUSSION

**A.    Motion to File Surreply**

"[W]here new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the non-movant an opportunity to respond." *Provenz v Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996).

In this case, Defendants assert and GP admits that it submitted "new evidence" with its reply. Dkt. 20; Dkt. 21 ("The email string we submitted with GP's reply is merely additional evidence . . . ."). Thus, Defendants should be allowed an opportunity to respond. Similarly, additional arguments in a reply brief should be ignored unless the opposing party has an opportunity to respond. Therefore, the Court grants Defendants' motion for leave to file a surreply and will consider Defendants' additional arguments.

**B.    Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). In this case, the facts are undisputed and the parties only ask for a determination whether the Decision should be vacated as a matter of law.

**C.    Standard of Review**

"It is well-settled that federal labor policy favors the resolution of disputes through arbitration; thus, judicial scrutiny of an arbitrator's decision is extremely limited."  *S. Cal. Gas Co. v. Utility Workers Union of Am., Local 132, AFL–CIO*, 265 F.3d 787, 792 (9th Cir. 2001).  Under § 301 of the Labor Management Relations Act, an arbitration award is subject to vacatur only in a "narrow" set of circumstances:

> (1) when the award does not draw its essence from the collective bargaining agreement and the arbitrator is dispensing his own brand of industrial justice; (2) where the arbitrator exceeds the boundaries of the issues submitted to him; (3) when the award is contrary to public policy; or (4) when the award is procured by fraud.

*Id*. at 792–93.

GP contends that this case is concisely summed up by the Yogi Berra quote "it's déjà vu all over again."  Dkt. 13 at 1.  GP is referring to this Court's opinion in *Georgia-Pac. Gypsum, LLC v. Int'l Bhd. of Teamsters Local 117*, No. C11-5497BHS, 2011 WL 5438981 (W.D. Wash. Nov. 8, 2011), where an employee tested positive for cocaine and was terminated.  The Court vacated the arbitrator's award concluding that the arbitrator dispensed his own brand of industrial justice by construing the CBA to include a "just

1    cause" standard in the drug test provisions instead of abiding by the unambiguous

2    automatic termination language.  *Id.* at *3–4.  Contrary to GP's contention, the more

3    appropriate quote might be "the future ain't what it used to be."  Although the times have

4    changed and recreational marijuana is legal in Washington, this case is not about whether

5    an employer may terminate an employee for use of a legal drug in her personal life or

6    whether the employer must show that the employee was impaired while on the job.

7    Instead, this case turns on evidence, not drugs.

8            In reviewing an arbitral award, "[c]ourts . . . do not sit to hear claims of factual or

9    legal error by an arbitrator as an appellate court does in reviewing decisions of lower

10   courts."  *Hawaii Teamsters & Allied Workers Union, Local 996 v. United Parcel Serv.*,

11   241 F.3d 1177, 1180 (9th Cir. 2001) (citing *United Paperworkers Int'l Union v. Misco,*

12   *Inc.*, 484 U.S. 29, 38 (1987)).  In fact, even if "a court is convinced [the arbitrator]

13   committed serious error [this] does not suffice to overturn his decision."  *Eastern*

14   *Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000) (quoting *Misco*, 484

15   U.S. at 38).

16           In this case, the arbitrator concluded that GP could not rely on "hearsay evidence

17   alone to establish a positive test result justifying a reason to terminate Hansen."  Decision

18   at 9.  GP challenges this conclusion on numerous grounds.  While the Court will address

19   all of GP's arguments, it first concludes that the arbitrator's legal conclusion that certain

20   evidence was "unauthenticated and unsubstantiated hearsay" is beyond the scope of this

21   Court's review.  Therefore, unless GP shows a valid exception to this rule, the Court is

22   without authority to evaluate the correctness of the evidentiary decision.

1       First, GP argues that "the drug test results are clearly business records of GP and

2   are thus admissible hearsay under a hearsay exception."  Dkt. 13 at 10.  However, even if

3   GP is legally correct, the Court is precluded from reviewing this alleged legal error.

4   *Hawaii Teamsters*, 241 F.3d at 1180.  Therefore, GP's argument is without merit.

5       Second, GP argues "that, because the Union never challenged the authenticity or

6   accuracy of the test records during the grievance proceedings, these matters were not at

7   issue in the arbitration."  Dkt. 13 at 10 (citing *Southern Calif. Gas*, 265 F.3d at 792–93).

8   GP, however, fails to directly cite any provision of the CBA that requires an employee to

9   present evidentiary challenges at steps one through three of the grievance proceeding in

10  order to preserve the challenge at the fourth step.  *See* Dkt. 13 at 10–11.  The Court has

11  reviewed every step of the procedure and has failed to find any clause defining the

12  appropriate scope of a grievance.  *See* CBA, Article – 15.02.  Thus, the Court is unable to

13  conclude that this issue was beyond the scope of the issues submitted.  *Federated Dep't*

14  *Stores v. United Foods & Commercial Workers Union, Local 1442*, 901 F.2d 1494, 1498

15  (9th Cir. 1990) ("We treat the arbitrator's interpretation of the scope of the issues

16  submitted to him with great deference . . . .").  GP may have a valid argument in the

17  hypothetical situation where an employee grieves one issue, say an unexcused absence,

18  then without notice raises a mutually exclusive issue, say a prior discriminatory

19  comment, in arbitration.  That is not the circumstance of this case.  Instead, Hansen

20  consistently grieved her termination, and, when the proceeding reached the quasi-judicial

21  stage, the arbitrator concluded that GP failed to submit sufficient evidence to support that

22  grieved termination.  Therefore, the Court concludes that, after according great deference

1  to the arbitrator's decision, the admissibility of the test results were not outside the scope

2  of Hansen's grievance.

3        Third, GP argues that the arbitrator erred because the Union agreed in writing to

4  the admissibility of the test results.  Dkt. 18 at 3.  Local 117, however, objected to the

5  admission of the tests as hearsay.  Dkt. 17-1 at 48.  In response, the arbitrator kept them

6  in the record and reserved ruling on what weight to give them.  *Id*.  Thus, GP had the

7  opportunity to respond to the objection and, in fact, argued that the documents were

8  business records.  *Id*.  The arbitrator's decision that the documents were insufficient

9  evidence to meet the appropriate standard of review is an alleged legal error that is

10  beyond review.  *Hawaii Teamsters*, 241 F.3d at 1180.  Therefore, GP's argument is

11  without merit.

12        Finally, GP argues that "the Union has no basis to argue about the test results

13  themselves, given the procedural posture of the grievance."  Dkt. 18 at 3.  Unfortunately

14  for GP, Local 117 does not need to contest the admissibility of the test results.  The

15  parties agreed that the arbitrator's decision would be final and this Court is precluded

16  from reviewing any alleged legal error.  Therefore, the Court denies GP's motion to

17  vacate the arbitrator's decision based on the admissibility of the test results.

18        Coming full circle, the conclusion as to the evidentiary issue answers GP's other

19  alleged error regarding the interpretation of the CBA.  If GP failed to submit admissible

20  evidence to show that Hansen's body contained either marijuana or marijuana

21  metabolites, then the arbitrator's alleged erroneous interpretation of the CBA is

22

1  irrelevant.  Therefore, the Court denies this alleged error as moot and affirms the

2  decision.

### IV. ORDER

4      Therefore, it is hereby **ORDERED** that Defendants' motion for summary

5  judgment (Dkt. 11) and motion for leave to file surreply (Dkt. 20) are **GRANTED**; GP's

6  cross-motion for summary judgment (Dkt. 13) is **DENIED**; and the decision of Arbitrator

7  Olson is **AFFIRMED**.

8      Dated this 8th day of September, 2016.

9

10  _____
    BENJAMIN H. SETTLE

11  United States District Judge

12

13

14

15

16

17

18

19

20

21

22